# The Commonwealth *against* Murdoch.

Under the act of the 10th of March 1810, entitled " an act taxing certain offices," the commonwealth cannot recover against a prothonotary for a fraction of a year, where the amount of the fees received by him during that time does not exceed 1500 dollars.

WRIT of error to the court of common pleas of *Washington* county.

Anterior to the 1st of October 1818, Alexander Murdoch, the defendant in error, and defendant below, had been the prothonotary of the court of common pleas of Washington county, for the space of about nine years; and had, during that period, accounted and paid over annually to the auditor-general, fifty per cent upon the amount of fees received by him in his office above the sum of 1500 dollars in each year, agreeably to the provisions of the act of the 10th of March 1810, *Purd. Dig.* 665, entitled "an act taxing certain offices." After the 1st of October 1818 he continued in the office till the 18th of May following, when he was removed by the governor, who appointed another in his place. During this fraction of a year, from the 1st of October 1818 to the 18th of May 1819, including both dates, he received fees, amounting in the whole, to the sum of 1355 dollars and 46 cents.

The Commonwealth claimed to charge the defendant with the one-half of the amount that this sum exceeded the rate of 1500 dollars per annum, for that portion of the year which he had been permitted to remain in office after the last day of September 1818; and accordingly brought this action of debt upon the defendant's official bond to recover it.

On the trial of the cause in the court below, the following point was submitted to the court by the counsel of the Commonwealth.

Under the first section of the act of the 10th of March 1810, is Alexander Murdoch, late prothonotary, &c. liable and bound to pay to the Commonwealth a proportional part of the fees of office for a period less than one year?

On this point the court below charged against the plaintiff, which was the subject of the assignment of error.

*Waugh*, for plaintiff in error.

[Commonwealth v. Murdoch.]

It could be shown that the office, held by the defendant, yielded more than 2000 dollars during the fiscal year, in which he was removed. If the commonwealth is to be deprived of the fifty per cent tax upon the surplus that would remain in this case above the sum of 1500 dollars, the obvious intention of the legislalure in passing the act of the 10th of March 1810 is wholly defeated. The very title of the act, " an act taxing certain offices," affords a clear index to their intention, which was to impose a tax upon the office and not upon the officer. And it not being a personal tax, nor a tax upon the real property of individuals, the act should be liberally construed; and so it has uniformly been in the office of the auditor-general. Upon the principle for which we contend in this case, the accounts of the officer, we apprehend, can be settled with as much precision as if he remained in office the whole year. The amount received could be ascertained from the account of the income of the office, which the prothonotary is bound by law to keep. With regard to the cases of Heister *v.* Commonwealth, 17 *Serg. & Rawle* 255, and Commonwealth *v.* West, 1 *Rawle* 29, they have reference to a distinct provision of the legislature.

*M'Kennon,* for defendant in error.

The plaintiff claims under the statute directing a tax to be paid by certain officers on the fees received by them, and alleges that the defendants are liable to the state for the proportion of the tax on 1300 dollars received by A. Murdoch, during the fraction of the year immediately preceding his removal from the prothonotary's office. We say that the prothonotary is bound to pay no tax, inasmuch as he did not receive 1500 dollars during that fraction of the year. In giving a construction to a statute, the primary object with the court is to ascertain the intention of the legislature. Where words are doubtful, there are a variety of circumstances which will assist in ascertaining their meaning; but where the terms are clear and unambiguous, the court is not at liberty to indulge in conjecture as to the intention of the legislature, different from the plain language. Neither are they at liberty, in carrying into execution an act like the present, which imposes a tax upon a particular class of persons, to supply any supposed defect or omission on the part of the legislature. They are to construe, not to make the law. The act of assembly is, to my mind, clear and explicit in its terms. "The officer shall annually furnish a copy of his account to the auditor-general, and whenever the amount of any of the said accounts shall exceed the sum of 1500 dollars," he shall pay a tax on the excess. The statute says he shall pay no tax unless he receives more than 1500 dollars. Upon no correct principle of construction can it be contended that he shall pay a tax on 1300 dollars, or any less sum. Neither the words, nor the spirit of the act, will lead to such a construction. If the legislature had intended to embrace the present case, how easy a matter would it have been to say so. They could have readily introduced

[Commonwealth v. Murdoch.]

a clause, "and so a proportional tax shall be charged on a less sum received during a fraction of the year in case of death, removal or resignation," or something to that effect. But if the construction contended for by the plaintiff in error be put upon the act, what rule can be adopted for determining the tax on less than 1500 dollars, received during a part of the year? No rate of apportionment is fixed—no rule is prescribed by the act. Will you charge the prothonotary a proportional or *pro rata* tax on the sum he receives during the fraction of the year? This would work manifest injustice to the officer. Clearly it was not the intention of the legislature that he should pay a cent unless 1500 dollars should be received during the year. How is it possible then to determine, that if the defendant had remained in office he would have received that sum? Suppose a prothonotary is removed in six months, and has received 800 dollars during that period, could any court undertake to say that if he had remained till the end of the year he would have received 800 dollars more, and that he should therefore be charged with a proportional tax? It will not do to have reference to the receipts of his successor, as is contended for on the part of the plaintiff in error. The collection of fees depends in a great measure upon the vigilance, energy and exactness of the officer. Because B received 1000 dollars during the first six months of his term, it will not do to say that if A, his predecessor, had been continued he would have received the same sum. Their habits may be entirely different, and of course the amount received would be different. Besides, the amount of cash receipts depends upon the different practice adopted by different officers. With some of them, the price of the original writs, of all rules and subpœnas, is required to be paid at the time they are issued. With others, the practice is to require payment only at the final determination of the suit. There is then no satisfactory rule by which the proportional tax for a less sum than 1500 dollars, and for a shorter period than one year, can be ascertained; and this is no doubt one strong reason why the legislature did not exact it. It is said, however, that our construction will be very injurious to the treasury. But it is obvious that if the executive has a regard to the provisions of the act under consideration in making his appointments and removals, the evil must be rather of a limited character. It seldom happens that it is necessary to remove officers at the time the defendant was displaced. But be this as it may, the law has not imposed a tax upon him, and we protest against its exaction.

He referred to 5 *Smith's Laws* 105, and cited the cases of Heister *v.* Commowealth, 17 *Serg. & Rawle* 255; and Commonwealth *v.* West, 1 *Rawle* 29.

The opinion of the Court was delivered by.

KENNEDY, J.—The only question for consideration is, can the Commonwealth, under the act of assembly of the 10th of March 1810, or under any other act in connection with it, recover for a fraction of a

[Commonwealth v. Murdoch.]

year, where the amount of the fees received by the officer in that time do not exceed 1500 dollars? The first section of the act of 1810 directs, that "the prothonotaries, or clerks of the supreme courts, of the courts of *nisi prius*, of the courts of common pleas, of the courts of oyer and terminer and general jail delivery, of the courts of quarter sessions of the peace, of the orphan's court; the registers of wills and the recorders of deeds in this commonwealth, shall, from and after the 1st day of October then next, keep or cause to be kept, a full and accurate account of all the fees received for services performed by them, or any person employed by them in their respective offices; and shall annually thereafter furnish a copy of such account, upon oath or affirmation, to the auditor-general, who shall proceed to examine the accounts so furnished by the officers aforesaid; and whenever the amount of any of the said accounts shall exceed the sum of 1500 dollars, the auditor-general *shall charge the said officers* respectively *50 per cent* on the amount of such excess, which sum so charged shall be paid by them into the treasury for the use of the commonwealth." Now it is evident from the language of this section, that there is no *express* authority given to charge the officer on the amount received by him during a part of the year in the same ratio that such sum and portion of the year may bear to 1500 dollars and the whole year; nor to charge him in any case where the amount received in fees shall not in the course of the year exceed 1500 dollars. It has, however, been contended, that it is the office and not the officer that is to be assessed, and consequently if the office in the course of the year should yield an excess beyond the 1500 dollars in fees, one half of such excess ought to be paid to the Commonwealth, whether the same person be continued in the office throughout the year or not; and that this is the true spirit and meaning of the act. It does not appear to me that the legislature intended this; neither do I think that the terms employed by them in the act will bear this construction. The provisions of the second section seem to militate against it. By this section it is enacted that "if two or more of the said offices shall be held by one person, the auditor-general shall *add together* the fees received in the offices so held, and shall charge the *same per centage* on the *aggregate amount* of the fees received by such persons, as is directed in the first section of this act, to be paid as therein directed." So that in many instances two or more of these offices may be held separately by different persons, and the amount of fees received in each be less than 1500 dollars, when it must be admitted by all that no tax will be payable on them; but if united in and held by the same person, a tax of several hundred dollars will become payable annually to the state. Hence it would appear, that it was not so properly the office, as the officer that was intended to be taxed on account of the largeness of the amount of his income, derived from the fees received by him for services performed in his offices. The amount received by him in the course of the year was to determine whether he was to pay any thing to the

[Commonwealth v. Murdoch.]

state or not. He was not to be charged unless he should in the course of the year receive a sum in fees exceeding 1500 dollars, and then only was he to be charged and required to pay into the state treasury 50 per cent on the amount of the excess, whatever it might be. In case of his removal from office before the expiration of the year, when it would have been his duty to have made a return to the auditor-general, had he been permitted to remain in office, the fees which his successor might receive for his own use in the office, could not, as was argued in this case, be brought into view in order to show the probable amount that he would have received had he remained in office, and to furnish the *data* whereby he might be charged. The legislature, I apprehend, in passing the act of 1810, never thought of such a thing. The act contains no provision for calling a person, turned out of office before the expiration of the year, to an account, and requiring him to pay when he has not received an excess beyond the 1500 dollars. But to make provision for such cases, and for the case under consideration, the legislature on the 24th of March 1818, passed a supplement to the act of 1810, *Purd. Dig.* 666, directing that " in case of the resignation or *removal* from office of any officer who by law is accountable to the commonwealth for certain surplus fees of office, it shall be the duty of his successor or successors in office, who from time to time may receive and pay over such fees to his predecessor or predecessors in office, to take duplicate receipts for the same, and to transmit one of the said receipts to the auditor-general, together with a statement of such fees as may otherwise be received by such predecessor from time to time, as far as he may be enabled to ascertain the same. And it shall be the duty of the auditor-general, from time to time, to settle the account of the late officer to whom such fees shall have been paid, and compel him to account upon oath or affirmation, and to pay over such proportion of the arrearages of fees so received by him as would have been paid to the commonwealth had he remained in office, allowing to such late officer, in case of deficiency in any year while he shall have held his office, such sum as shall make up the whole sum he would have been entitled to have retained free from any tax thereon." I consider this case as falling clearly within the terms of this latter act, which made it the duty of Mr Murdoch's successor in office to keep an account of all fees received by him for Mr Murdoch's use, and to pay them over to him, taking duplicate receipts therefor, one of which receipts he was bound to transmit to the auditor-general, together with all such fees as Mr Murdoch might have received otherwise, so far as he the successor could ascertain the same. And in addition to this the auditor-general had also authority thereby given to him to compel Mr Murdoch to render an account of the fees received by him after he went out of office as well as before, upon oath or affirmation ; and, according to the amount which should appear from all these various sources of information to have been actually received by Mr Murdoch at the end of the year in which he

[Commonwealth v. Murdoch.]

was removed from office, he was either to be charged or not charged, as the amount received throughout the whole year by him might have fallen within or over 1500 dollars; but even then he was not to be required to pay any thing to the state until he had received not only an excess beyond the 1500 dollars for the year in which he was turned out of office, but likewise in addition thereto a sum sufficient to make his fees equal to 1500 dollars in every preceding year that he held the office, in which the amount of fees received by him fell short of that sum.    On the trial of this case it was not shown that the defendant had received any thing beyond the 1355 dollars 46 cents during the year ending with the last day of September 1819; and this sum being less than 1500 dollars, he had, according to a true exposition of the acts of assembly on this subject, a right to retain the whole of it.

Judgment affirmed.